UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

CENTRAL DIVISION

| DAVID AESOPH, | * | CIV. 07-3015-RAL |
|---|---|---|
| Petitioner, | * | |
| vs. | * | ORDER ADOPTING REPORT AND |
| | * | RECOMMENDATION AND |
| DOUGLAS WEBER, Warden, South Dakota State Penitentiary, | * | DISMISSING PETITION |
| Respondent. | * | |

This matter is before the Court following a Report and Recommendation (Doc. 42) from United States Magistrate Judge John E. Simko. Petitioner David Aesoph timely filed eight enumerated objections to the Report and Recommendation. (Doc. 44). The Court has conducted a *de novo* review of the record and case as a whole. The Court, following its *de novo* review of the record, adopts the Report and Recommendation of Magistrate Judge Simko and overrules the Petitioner's objections to the Report and Recommendation.

## I. PROCEDURAL BACKGROUND

The Court adopts the Report and Recommendation in its entirety and will not attempt to re-write the fifty-two page Report and Recommendation to set forth fully the facts of this case. The facts are set forth in summary fashion here primarily for purposes of addressing Petitioner's Objections to the Report and Recommendation.

Petitioner David Aesoph ("Aesoph") was found guilty of first degree murder of his wife Tania Aesoph following a jury trial in South Dakota state court on October 5, 2000. The Honorable Max A. Gors sentenced Aesoph on November 8, 2000, to life imprisonment without parole. Aesoph filed a motion for a new trial, which was denied on March 5, 2001.

Aesoph appealed his conviction, including the denial of his motion for a new trial and the trial court's revocation of pre-trial bond, to the South Dakota Supreme Court. State v. Aesoph, 647 N.W.2d 743 (S.D. 2002). The South Dakota Supreme Court affirmed his conviction. Id.

Aesoph then filed a *pro se* petition for writ of habeas corpus under 28 U.S.C. § 2254, which was dismissed because Aesoph had failed to exhaust state remedies. Aesoph filed another federal habeas petition, which again was dismissed for failure to exhaust state remedies. Aesoph then filed a petition for a writ of habeas corpus in state court on February 20, 2004. After an evidentiary hearing held on September 9, 2004, before the Honorable Kathleen Trandahl, the state court denied Aesoph's motion for certificate of probable cause to appeal. Aesoph applied to the South Dakota Supreme Court for a certificate of probable cause to appeal, which the South Dakota Supreme Court denied on February 27, 2007.

Aesoph then filed a timely petition for a writ of habeas corpus under 28 U.S.C. § 2254 on March 30, 2007, (Doc. 1), which he subsequently amended. (Doc. 13). The Court referred the case to Magistrate Judge John E. Simko, who submitted his Report and Recommendation to the Court on February 11, 2010. (Doc. 42). The Report and Recommendation was served on Aesoph as required by 28 U.S.C. § 636. Aesoph filed formal objections to the Report and Recommendation on February 26, 2010. (Doc. 44).

## II. STANDARD OF REVIEW

This Court has conducted a "limited and deferential review" of the underlying state decisions on Aesoph's case. See Osborne v. Purkett, 411 F.3d 911, 914 (8th Cir. 2005). In a section 2254 case such as this one, when the state court has ruled on the merits of the claim, the Anti-Terrorism and Effective Death Penalty Act ("AEDPA") mandates that this Court apply a deferential standard under which the Petitioner must demonstrate that the state court adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence" presented in state court. 28 U.S.C. § 2254(d)(1), (2).

In a federal habeas proceeding, a presumption exists that the state court's factual findings are correct. 28 U.S.C. § 2254(e); Thatsaphone v. Weber, 137 F.3d 1041, 1045 (8th Cir. 1998). The Court may not disregard this presumption unless it finds that the state court's findings lacked even fair support in the record. Marshall v. Lonberger, 459 U.S. 422, 432, 103 S. Ct. 843, 850, 74 L. Ed. 2d 646 (1983).

As set forth above, the Court has conducted a *de novo* review of the record and has determined to accept the Report and Recommendation. Because Magistrate Judge Simko's Report and Recommendation was both detailed and accurate in its discussion of the facts, governing law, and application of the facts to the law, this Court focuses its analysis on the eight objections that Aesoph made to the Report and Recommendation.

## III. PETITIONER'S OBJECTIONS

### A. First Objection

In his first objection, Aesoph asserts that the Report and Recommendation viewed his Sixth Amendment challenge to the jury selection too narrowly by not addressing the way that the Lyman County Sheriff selected additional prospective jurors once it became apparent that more prospective jurors were needed in order to seat a jury. Aesoph notes that the reference on page 33 of the Report and Recommendation addressed only the issue of exclusion of Native Americans on the jury. However, the Report and Recommendation in reality dealt with Aesoph's objection to the method used by the sheriff to bring in more prospective jurors.

The Sixth Amendment guarantees a defendant the right to a jury composed of a fair cross-section of the community. See Taylor v. Louisiana, 419 U.S. 522 (1975). In order to establish a violation of his Sixth Amendment right, a defendant must show: (1) that the group excluded was a distinctive group in the community; (2) that representation of this group in jury pools is not fair and reasonable in relation to the number of such persons in this community; and (3) that this under-representation is due to the systematic exclusion of the group from the jury selection process. Wharton-El v. Nix, 38 F.3d 372, 376 (8th Cir. 1994).

Aesoph argues that he was denied a jury composed of a fair cross-section of the community. In his first objection, Aesoph suggests that the deputy sheriff "knew that at least one-half of [the additional prospective jurors brought in] would be pro-law enforcement." Aesoph has misread somewhat the deputy sheriff's testimony on this point which was:

JUDGE: Well, I think the $64 question did you call anybody that you thought was pro-law enforcement?

DEPUTY: Half the list I'd say probably not.

3

See Report and Recommendation at p. 8. (JT 238-45).[1]

Even if this testimony were read to mean that half of the jurors was pro-law enforcement, a group with pro-law enforcement attitudes does not constitute a "distinctive group" under the Sixth Amendment analysis. Under Lockhart v. McCree, 476 U.S. 162 (1986), "groups defined solely in terms of shared attitudes that would prevent or substantially impair members of the group from performing one of their duties as jurors . . . are not 'distinctive groups' for fair-cross-section purposes." Id. at 174. In Lockhardt, the Supreme Court of the United States considered whether a group that holds a certain view towards the death penalty- specifically, that they would not under any circumstances vote for the imposition of the death penalty- constitutes a "distinctive group." The Court in Lockhardt determined that "distinctiveness" is linked to the three purposes of the fair-cross-section requirement, these purposes being (1) guarding against the exercise of arbitrary power, (2) preserving public confidence in the fairness of the criminal justice system, and (3) implementing our belief that sharing in the administration of justice is a phase of civic responsibility. Id. at 174-75, citing Taylor v. Louisiana, 419 U.S. 522, 530-31 (1975). Women, blacks, and Mexican Americans, for example, are "distinctive groups," and the wholesale exclusion of these groups from the jury pool would contravene the purposes of the fair-cross-section requirement. See Lockhart, 476 U.S. at 175. If a person is excluded because of their race, sex, or ethnic background, they are being excluded for reasons unrelated to their ability to serve as members of the jury in a particular case. Id. The exclusion gives rise to an appearance of unfairness and improperly deprives members of historically disadvantaged groups the right to serve on juries in criminal cases. Id.

The exclusion of jurors who are or are not pro-law enforcement does not contravene the three purposes of the fair-cross-section requirement in the manner that excluding a juror because he is Native American does. Based on the analysis of the United States Supreme Court in Lockhart, a group defined solely in terms of sharing a pro-law enforcement attitude is not a "distinctive group." On the other hand, a group defined as Native American is a "distinctive group" for purposes of a fair-cross-section claim.

---

[1] References to the transcript of the jury trial will be by "JT" followed by the appropriate page number.

4

Second, although Native Americans are a distinctive group, apparently there were two Native Americans on the jury panel, one of whom was excused as an alternate, the other of whom deliberated as a juror. (JT 414, 2779). Moreover, Aesoph has failed to satisfy the second prong of the Taylor test because he has not presented any statistical evidence that the percentage of Native Americans on Lyman County juries is not fair and reasonable in relation to their population in the county. In Wharton-El, the United States Court of Appeals for the Eighth Circuit found that the petitioner did not provide any reliable evidence of the percentage of African-Americans in his county or the percentage of African-Americans in the county's jury pools, and therefore, did not provide sufficient evidence necessary for the second element of the test. Wharton-El, 38 F.3d at 376. Because Aesoph has failed to present any evidence of the percentage of Native Americans in the Lyman County community or of the percentage of Native Americans in Lyman County jury pools in 2000, the Court cannot just assume that Native Americans have not been fairly and reasonably represented on Lyman County jury pools in relation to their presence in the community and thus cannot grant relief to Aesoph on that ground.

Third, on the "systematic exclusion" prong of the Taylor test, whether the evidence presented at trial reflected any systematic exclusion of a distinctive group in the jury panel selection is a factual finding on which the state court's finding is entitled to the presumption of correctness. 28 U.S.C. § 2254(d); Wharton-el, 38 F.3d at 376. The South Dakota Supreme Court found that the Petitioner had not met the burden to show a systematic exclusion. See State v. Aesoph, 647 N.W.2d 743, 758 (S.D. 2002). Aesoph's first objection to the Report and Recommendation therefore is overruled.

**B. Second Objection**

The factual background section of the Report and Recommendation states that the victim Tania Aesoph "alleged David abused her mentally, physically and verbally" and sought a divorce on the grounds of extreme cruelty. In Aesoph's second objection to the Report and Recommendation, Aesoph objects to this statement and asserts that the victim always denied allegations of physical abuse. Aesoph points to the testimony of the victim's divorce attorney Lee Burd to the effect that the victim did not tell her during their meetings that Aesoph hit her.

5

Aesoph further argues that because Attorney Burd failed to seek for Tania a protective order from domestic abuse on behalf of the victim, there is evidence that the victim did not allege physical abuse.

This Court has conducted a thorough review of the trial transcript. Trial testimony supports that the victim made statements that she feared Aesoph and that Aesoph had been physical with her. Indeed, the testimony of attorney Lee Burd at trial was that the victim reported that Petitioner "had backed her [victim] into a wall and was jabbing . . . his finger into her chest." (JT 802). The testimony of Janine Rathert was that the victim told her that she was leaving her husband, that she could not handle the abuse anymore and that "she had verbally, mentally, physically been beaten and abused and she couldn't handle it anymore." (JT 672).

The state court's factual findings of Aesoph's prior abuse of his wife, therefore, find fair support in the record. The Report and Recommendation correctly stated the facts from trial. Aesoph's second objection to the Report and Recommendation is overruled. Even if this objection had validity, this objection does not merit granting of relief on the Petition or a different outcome in this case.

## C. Third Objection

The factual background section of the Report and Recommendation refers to Aesoph's purchase of life insurance on his wife's life. Aesoph's third objection to the Report and Recommendation is to the nature of this reference, arguing that the language improperly implies that Aesoph alone purchased the life insurance without the victim's knowledge.

The Court finds that the Report and Recommendation accurately summarizes the facts surrounding Aesoph's purchase of life insurance. The references do not imply that the victim was unaware of the purchases or that she did not consent. Therefore, Aesoph's third objection to the Report and Recommendation is overruled. Even if the objection had validity, this objection does not merit granting of relief on the Petition or a different outcome in this case.

## D. Fourth Objection

The Report and Recommendation discusses whether Aesoph was subjected to a custodial interrogation on November 18, 1999, when he was interviewed by South Dakota Division of Criminal Investigation ("DCI") Agents Mike Braley, Brian Zeeb, and Jerry Lindberg. The

Report and Recommendation states that "Braley was wearing a firearm, but it was not exposed unless he removed his jacket." Aesoph objects to this reference and points to his own testimony that he saw Braley's gun.

This Court has conducted a *de novo* review of the record, and finds that based on the testimony of Agent Braley during the motion hearing and the trial, the gun worn by Braley was only exposed when he removed his jacket. The statement on page 21 of the Report and Recommendation does not misstate the evidence. Moreover, the issue of whether Braley's gun was or was not visible to Aesoph does not change the outcome of the analysis of whether Aesoph was subject to a custodial interrogation on November 18, 1999. The Report and Recommendation's discussion of the facts surrounding the November 18, 1999 interview is accurate and thus Aesoph's fourth objection to the Report and Recommendation is overruled.

### E. Fifth Objection

Aesoph objects to the findings of Judge Trandahl from the Petitioner's state habeas hearing that no blood was found in the stair area, thereby undermining the accidental fall theory advanced by Aesoph. Judge Trandahl based this finding on the testimony of expert Rex Riis and DCI Agent Mike Braley that no blood was found in the stair area where the Petitioner alleges the victim fell to her death. In the context of a § 2254 case such as this one, the state court's factual findings are presumed to be correct, and a federal habeas court may not disregard the presumption unless specific conditions are met, such as the state court's findings lacked fair support in the record. 28 U.S.C. § 2254(e); Marshall v. Lonberger, 459 U.S. 422, 432 (1983); Thatsaphone v. Weber, 137 F.3d 1041, 1045 (8th Cir. 1998).

This Court has done a *de novo* review of the factual record, and finds Judge Trandahl's factual findings of an absence of blood in the stair area to have fair support in the record. Therefore, the findings by Judge Trandahl are presumed to be correct. Aesoph's fifth objection to the Report and Recommendation is overruled.

### F. Sixth Objection

Aesoph's sixth objection is that Dr. Saami Shaibani based his opinion on the observation of the scene eight months after the death of the victim and should not have been allowed to testify. The Report and Recommendation determined that the trial court did not err in allowing

7

expert testimony from Dr. Saami Shaibani and that Aesoph failed to show sufficient prejudice from the admission of the testimony. The South Dakota Supreme Court has held similarly, its factual findings were fairly supported in the record, and it did not unreasonably apply federal law. The admission of the expert testimony did not violate Aesoph's right to due process, as the record adequately provides sufficient foundation for the expert's testimony. The Court has done its own *de novo* review of the record and finds that the trial court's decision to admit the expert testimony was not contrary to clearly established law despite the delay in the expert's view of the scene. Aesoph's sixth objection to the Report and Recommendation is overruled.

**G. Seventh Objection**

Aesoph objects to the Report and Recommendation's treatment of the telephone calls that came into Aesoph's home during the interviews conducted on November 18, 1999, by DCI Agents Braley, Zeeb, and Lindberg. Aesoph argues that the Report and Recommendation does not specifically note that Braley told the Petitioner to sit down and would not allow Aesoph to answer the telephone calls. However, the Report and Recommendation does state in a footnote that "[i]t is acknowledged that in an effort to minimize interruptions, Agent Braley precluded phone conversations during the interviews." (Doc. 42 at footnote 11). The Report and Recommendation then goes on to explain that such preclusion would "not render the interviews custodial," citing to United States v. Czichray, 378 F.3d 822, 828 (8th Cir. 2004), which supports this conclusion. Aesoph's seventh objection to the Report and Recommendation is overruled.

**H. Eighth Objection**

In its discussion of the factual background, the Report and Recommendation refers to the expert testimony of Dr. Thomas Bennett. In his final objection to the Report and Recommendation, Aesoph contends that the Report and Recommendation omits the fact that Dr. Bennett testified that he observed carpet burns on the victim's left cheek. However, the Report and Recommendation does note that Dr. Bennett's testimony included an assessment of patterned injuries across the left cheek and petechial patterns around her face. (Doc. 42 at p. 14). Aesoph's eighth objection to the Report and Recommendation is overruled.

Now, therefore, it is

ORDERED that the Petition for Writ of Habeas Corpus (Doc. 13) is denied and dismissed with prejudice. It is further

ORDERED that Respondent's Request to Dismiss the Petition (Doc. 25) without an evidentiary hearing is granted. It is further

ORDERED that the Report and Recommendation (Doc. 42) is adopted. Finally, it is

ORDERED that Petitioner's objections (Doc. 44) are overruled.

Dated March 30, 2010.

BY THE COURT:

_____
ROBERTO A. LANGE
UNITED STATES DISTRICT JUDGE